UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN BURGER,

        Plaintiff,        CIVIL ACTION NO. 12-cv-11763

vs.

                            DISTRICT JUDGE STEPHEN J. MURPHY, III

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Steven Burger seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 8) and Defendant's Motion for Summary Judgment (docket no. 9). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 9) be GRANTED.

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of August 24, 2007, alleging that he had been disabled since January 23, 2007, due severe pain in his elbows, wrists, and hands. (*See* TR 12.) The Social Security Administration denied benefits. (*See* TR 10.) Plaintiff requested a *de novo* hearing, which was held on May 14, 2010, before Administrative Law Judge (ALJ) Thomas L. Walters, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing other work in the regional economy. (TR 16-17.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. Plaintiff and Defendant each filed their Motions for Summary Judgment.

### III.     PLAINTIFF'S TESTIMONY AND THE VOCATIONAL EXPERT'S TESTIMONY

#### A.     Plaintiff's Testimony

Plaintiff was 50 years old at the time of the administrative hearing and 47 years old at the time of alleged onset. (*See* TR 38.) He has a high-school education. (TR. 38.) Plaintiff worked as an assembler at General Motors for approximately 27 years, until January 2007, when he left work due to "problems with both upper extremities." (TR 39-40.) After attempting to return to work a few times in early 2007, Plaintiff eventually left GM because the company could provide no work that could accommodate his restrictions; he testified that his reaching and lifting were restricted, but he could not remember to what extent. (TR 45-46.) He receives workers' compensation payments and disability pension payments. (TR 38-40.) At the time of the hearing, he was not employed, he was not married, and he had no children. (TR 38.)

Plaintiff testified that his problems started in his left (dominant) arm and became bilateral over time. (TR 40-41.) He testified that his hands go numb; "it's like a cold sensation . . . that seems to never go away." (TR 44.) He also gets a burning sensation in his elbows. (TR 44.)

Plaintiff indicated that the pain and numbness cause him to have problems gripping, pushing, and pulling. (TR 44.) He testified that he can lift about 10 pounds, that there are times when he cannot hold a cup, and that he has problems with fine dexterity due to the numbness. (TR 44-45.) Plaintiff also testified that he takes prescription ibuprofen for his pain and that surgery was proposed in May 2007, but he declined because "[he] would never have full use of [his] arm again." (TR 42-43.)

Plaintiff testified that on a typical day, he wakes up, showers, shaves, feeds himself, does the dishes, vacuums, mops the floors, does laundry, and "take[s] care of the house pretty much." (TR 44.) He lives by himself, he does his own grocery shopping, he drives, and he cuts his own grass using a riding lawn mower, which he indicated takes "[a] couple hours." (TR 42.) Plaintiff indicated that he drove to his hearing on his own (about an hour drive) with no upper-extremity problems, but he stated that he does sometimes have to take a break while he is mowing his lawn. (TR 42-43.) Plaintiff also testified that he takes naps during the day because he periodically wakes up at night, so he's tired during the day. (TR 46.)

### B. Plaintiff's Medical Record

Plaintiff neither offers an account of his medical record as part of his Motion nor does he assert that the ALJ's interpretation of his medical record was error. (*See* docket no. 8.) Moreover, Plaintiff only attacks the ALJ's determination with regard to Plaintiff's credibility. (*Id.*) Thus, the full contents of Plaintiff's medical record are not required for the Court to reach a conclusion, and therefore, the Court will not include a recitation of Plaintiff's medical record and will, instead, adopt the ALJ's account of Plaintiff's medical record in his Step 2 determination. (TR 12-13.)

### C. The Vocational Expert

The ALJ asked the VE to consider an individual who was of the same age, education, and past work experience as Plaintiff and who was capable of "a range of sedentary, unskilled work that

did not require overhead reaching or lifting; did not require repetitive pushing, pulling, gripping or grasping; and, would only require lifting of 10 pounds, the light designation being for the amount of time on the feet on (sic) either standing or walking." (TR 47.)  The VE testified that such a person could perform work as a surveillance monitor or in some clerical positions. (TR 48.)  The VE then testified that if the ALJ gave Plaintiff's testimony full credibility, he would be precluded from all work. (TR 48.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2011; had not engaged in substantial gainful activity since January 23, 2007; and suffered from severe bilateral medial and lateral epocondylitis, left cubital tunnel syndrome, and bilateral carpal tunnel syndrome; he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 12.)  The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not totally credible (TR 14), and although Plaintiff could not perform his past work, he had the ability to perform a limited range of work, and there were jobs that existed in significant numbers in the economy that Plaintiff could perform. (TR 15-17.) Therefore, he was not suffering from a disability under the Social Security Act at any time from January 23, 2007, through the date of the ALJ's decision. (TR 17.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525,

528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that Defendant's

decision should be reversed or remanded because the ALJ failed to properly evaluate Plaintiff's credibility, which ultimately caused the ALJ to present an improper hypothetical to the VE. (Docket no. 8 at 6.)

### 1. Waiver

Defendant asserts that Plaintiff has failed to brief any claim with sufficient specificity to avoid waiver. (Docket no. 9 at 7.) Plaintiff has not responded, and the Court agrees with Defendant. As Defendant argues, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citations omitted). "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Here, Plaintiff's five-page brief consists of one-page of facts; a three-page discussion of the Sixth Circuit's decisions in *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994), *Duncan v. Sect'y of Health and Human Servs*, 801 F.2d 847, 852 (6th Cir. 1986), and *Varley v. Sect'y of Health and Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987), which set forth the standard for credibility determinations in the Sixth Circuit; and the following argument (set forth in full):

> The ALJ determined that Mr. Burger could not return to any of his past relevant work. (Tr. 15) The burden of proof then shifted to the Commissioner to prove that Mr. Burger was capable, considering his age, education, and past work experience of engaging in other work. 20 C.F.R. §§ 404.1520(b)-(f). . . .
>
> . . .
>
> In this case, the Commissioner failed to satisfy this burden of proof warranting reversal or remand.
>
> Claimant testified at the hearing that his hands go numb, they constantly feel cold, he has a burning sensation in his elbows, he has difficulty grasping, he naps

7

> during the day regarding tiredness.
>
> When the VE was given these restrictions she testified that it would preclude all jobs. Obviously the AJ (sic) did not consider all the testimony in his hypothetical questions. The ALJ cannot pick and choose what testimony he relies but must consider the medical evidence and testimony as a whole.
>
> Because of this we are respectfully requesting a reversal of the decision or a remand of the case for a proper hearing.

(Docket no. 8 at 8-10 (omitted section includes Plaintiff's discussion of *Varley*).) Plaintiff's brief is completely devoid of any discernable legal argument. The Court is only aware that Plaintiff's argument relates to the ALJ's credibility determination because Plaintiff indicated as much in the heading of his "Legal Argument" section and in his "Issues" section. (*See id.* at 6.) As Defendant aptly states, "Plaintiff . . . leav[es] the Commissioner and this Court to wonder why he thinks the ALJ should have been required to find him credible." (Docket no. 9 at 8.) Therefore, the Court recommends that Plaintiff's Motion be denied as he has waived his only argument therein.

### 2. Plaintiff's Credibility

Even if Plaintiff has not waived his argument, the Court recommends that his Motion be denied. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's

allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

After stating that he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible, the ALJ discussed his reasoning for such a finding. (TR 14-15.) Specifically, the ALJ considered the following:

- the conflicting opinions of Plaintiffs' neurologists and the physicians at General Motors (TR 14);
- Plaintiffs conservative course of treatment, which included only pain medication, wrist splints, cortisone injections, and physical therapy (TR 14);
- conflicting reports regarding whether Plaintiff's physical therapy was effective (TR

14-15);

- Plaintiff's failure to look for employment after he left General Motors (TR 15); and

- the lack of any opinion identifying Plaintiff's condition as wholly preclusive of any employment (TR 15).

Additionally, the ALJ considered Plaintiff's daily activities:

> In looking at claimant's reports of daily activities during the period under adjudication in this claim, he volunteered that he did routine housework, took care of pets, cooked meals, drove a car, went shopping, and did yard work. Additionally, when the claimant saw Dr. Levin, a treating neurologist, in July 2008, he was recovering from a broken collarbone he sustained while riding a motorcycle (Exhibit 5F). Earlier, the claimant had reported he could no longer do this kind of activity because of hand, arm, and elbow pain and paresthesias. The claimant's credibility regarding functional limitations is severely harmed by these inconsistencies.

(TR 15.)

As noted herein, Plaintiff has not even attempted to explain how the ALJ's decision was deficient or how his characterization of Plaintiff's credibility is inappropriate. But even if Plaintiff had set forth an argument in that regard, the Court would be remiss if it did not afford appropriate deference to the ALJ's decision in this matter. The ALJ appears to have carefully considered the factors set forth in 20 C.F.R. § 416.929(c)(2) and has sufficiently articulated the weight that he gave Plaintiff's statements and the reasons for that weight. Therefore, the Court recommends denying Plaintiff's Motion and granting Defendants' Motion.

## VI.  CONCLUSION

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 9) be GRANTED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 19, 2013    s/ Mona K. Majzoub
                         MONA K. MAJZOUB
                         UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 19, 2013    s/ Lisa C. Bartlett
                         Case Manager